## 68158. GAYLOR v. KROGER COMPANY.

QUILLIAN, Presiding Judge.

Gary W. Gaylor brought an action against The Kroger Co. alleg-ing that Kroger wrongfully terminated his employment. The com-plaint sought recovery of back wages beginning August 16, 1982, rein-statement of employment and $25,000 punitive damages. The defendant filed an answer denying the material allegations of the complaint and asserting a statute of limitations defense.

After discovery, the defendant moved for summary judgment on the grounds there was no genuine issue of material fact. After both sides filed additional data and affidavits in support of their conten-tions, the matter was heard by the trial judge who, thereafter, entered judgment for the defendant. Plaintiff's appeal followed. *Held*:

The pertinent facts may be briefly stated as follows. Plaintiff was employed by defendant on May 3, 1972. Around October 22, 1979, he suffered injuries from an accident which occurred in the course of his employment.

The terms of plaintiff's employment were controlled by a collec-tive bargaining agreement between defendant and Local 1063, Retail Clerks International Union, and by defendant's policies and proce-dures manual. The agreement provided: "C. *Sickness or Injury*: A leave of absence because of sickness or injury not to exceed ninety (90) days will be granted to an employee upon written request sup-ported by medical evidence. Extensions will be granted up to ninety (90) days at a time for a cumulative total of one (1) year, if requested and granted in writing supported by proper medical evidence prior to each expiration. An employee who is injured on the job may be

granted additional ninety (90) day extensions (not to exceed three (3) years . . . G. Time spent on leave of absence will not be counted as time worked for the purpose of wage computation and will not result in loss of seniority. Failure to report back to work at the end of a leave of absence shall result in the employee being considered a voluntary quit. Any employee accepting employment elsewhere while on leave of absence shall be considered a voluntary quit, except in a case where such employee works for the Union."

The defendant's manual contained the following requirements: *"Leaves for illness, injury, pregnancy, convalescence or necessary temporary change of climate* required by the health of an employee may be granted upon written request supported by a medical certificate. Requests will be approved initially for a period of time not to exceed 90 days. Such request must be made regardless of whether or not benefits are payable by the Management Salary Continuation Plan, Kemba Sickness and Accident Plan, a jointly trusteed health and welfare plan, or state Worker's Compensation. *Extensions* may be granted up to 90 days at a time cumulative to a total of one year from the last day of active employment. Each such extension must be requested in writing with proper medical support prior to each expiration." It further provided: "If an employee's request for a leave of absence or an extension of a leave is denied and the employee subsequently fails to report for work as scheduled, the employee will be separated immediately. The effective date of separation will be the last day worked if the initial request is denied or the expiration date of the leave of absence which was not extended, as the case may be. Failure of the employee to return from any leave or any approved extension thereof, on or before its expiration date constitutes a resignation and severance of the employee."

Pursuant to the above quoted provisions, the plaintiff requested and received a 90-day leave of absence from October 23, 1979, through January 20, 1980. On March 13, 1980 he subsequently obtained another 90-day leave of absence for the period from January 21, 1980, through April 19, 1980.

On April 10, 1980, defendant through its personnel manager sent plaintiff a reminder that his extension was about to expire and he needed a request for extension accompanied by a doctor's statement. On April 16, 1980, the plaintiff sent a request for another leave of absence but did not include a doctor's statement. He informed defendant that he would send one after he visited his doctor the next week. This letter also contained a request to draw his vacation pay.

Defendant sent a letter dated May 19, 1980 requesting the medical statement and on May 25, 1980, the plaintiff answered that a statement would be forthcoming shortly. A few days later a doctor's statement was received by defendant which read as follows: "Gary

Gaylor is currently being treated by this office for his neurological illness." Defendant notified plaintiff on June 6, 1980, that the statement was insufficient and requested a statement indicating that plaintiff was disabled and unable to work. On August 29, 1980, defendant sent plaintiff a letter notifying him that no sufficient doctor's statement had been received and that unless one was received within five days "of your receipt of this letter, we will consider that you have terminated your employment with Kroger." On December 17, 1980, plaintiff was categorized as terminated effective September 5, 1980.

Plaintiff, in an affidavit, denied receiving the defendant's letter dated June 6, 1980, and related he had moved and changed addresses at that time. He also stated he regularly requested his vacation pay and was told he would receive it when he returned to work; he returned to work in August 1982 when he was informed of his termination and refused his vacation pay; until August 1982 he "had never been informed orally at the time [he] called defendant to ask for his vacation pay or any other time or in writing that [he] had been terminated."

Even if there might be a factual dispute as to whether a 90-day leave of absence was or should have been granted from April 20, 1980 to July 18, 1980, there is no basis for the plaintiff to recover back wages from August 16, 1982. For, as clearly appears from the record there was no subsequent extension of the 90-day leave of absence. The renewals were not automatic. Therefore, there was no authorized leave of absence after July 1980. This means that the failure to report back to work or obtain another leave of absence constituted a "voluntary quit" by the plaintiff.

Contrary to plaintiff's assertions the failure to pay him his accrued vacation pay would not prevent his termination. The vacation pay was in no way a prerequisite or condition precedent to his separation from employment.

The collective bargaining agreement provided regarding accrued vacation time: "If an employee who has not taken the vacation which he has earned by reason of his service leaves (regardless of whether he gives notice), goes into military service or is separated for any reason other than confessed or proven dishonesty, he shall receive his vacation pay at the time of leaving."

It is true that the vacation pay is owed "at the time of leaving," and the plaintiff requested payment of such sum. This fact would serve to prevent the grant of a summary judgment in toto except that the plaintiff did not seek to recover vacation pay in his complaint nor did he amend such complaint to include recovery for such pay as might be owed him. A close examination of the complaint reveals that it was narrowly drawn and strictly limited "to back wages beginning August 16, 1982" the time the plaintiff reported back to work.

The trial judge did not err in granting the defendant's motion for summary judgment.

*Judgment affirmed. Birdsong and Carley, JJ., concur.*

DECIDED JUNE 25, 1984.

*Carl H. Hodges*, for appellant.
*Paul Oliver*, for appellee.